**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **JEREMY BROUSSARD** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:25-cv-00913-E** |
| | § | |
| **PANDA RESTAURANT GROUP, INC. D/B/A PANDA EXPRESS and PANDA EXPRESS, INC.** | § | |
| | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

**OPINION & ORDER**

Before the Court are Defendants' Motion for Summary Judgment (ECF No. 39), Brief in Support (ECF No. 40); Plaintiff's Response (ECF No. 43), Brief in Opposition (ECF No. 44); and Defendant's Reply (ECF No. 49), and Brief in Support (ECF No. 50). The Court also reviewed Plaintiff's Motion for Leave to File a Sur-reply (ECF No. 52). Having reviewed the Parties' filings and the relevant caselaw, the Court **GRANTS** Defendants' Motion for Summary Judgment.

## I. BACKGROUND[1]

On May 12, 2023, Jeremy Brousard ("Plaintiff"), visited a Panda Express located at 2015 S. I-45 in Corsicana, Texas. Plaintiff parked near the front of the restaurant. A puddle of water covered Plaintiff's parking spot from behind the back tires to the front of the vehicle. Plaintiff walked through the puddle to get to the restaurant. When Plaintiff returned to his car with his takeout order he stepped on a parking bollard and jumped toward his car door while wearing flip flops to avoid the puddle. When Plaintiff landed, he slipped and fell backwards onto his shoulder. After the fall, Plaintiff noticed slime and algae in the water. After the fall, an ambulance

---

[1] Unless otherwise specified, undisputed facts are taken from the summary judgment briefing.

transported Plaintiff to Navarro Regional Hospital. Diagnostic imaging showed between ten and eleven disc herniations.

Plaintiff filed suit in the 13th District Court of Navarro County on March 13, 2025.[2] Panda Restaurant Group, Inc. d/b/a Panda Express and Panda Express, Inc. ("Defendants") removed the case to this Court on April 11, 2025.[3] On April 27, 2026, Defendants filed the Motion for Summary Judgment.[4] The Motion is ripe for the Court's review.

## II. LEGAL STANDARD

### A. Motion for Summary Judgment

The Court should grant summary judgment where the pleadings and evidence show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is not "a disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotation marks omitted).

"[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must inform the court of the basis of its motion and demonstrate from the record that no genuine dispute as to any material fact exists. *See Celotex*, 477 U.S. at 323. "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner

---

[2] Defs.' Not. Removal Exh. B, ECF No. 1-2.
[3] Defs.' Not. Removal, ECF No. 1.
[4] Defs.' Mot. Summ. J., ECF No. 39.

in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

When reviewing the evidence on a motion for summary judgment, the Court must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). If there is no support for disputed allegations such that "reasonable minds could differ as to the import of the evidence," the Court will grant the motion. *Anderson*, 477 U.S. at 250.

**B. Premises Liability**

Under Texas law, to prevail on a premises liability claim, Plaintiff must prove four essential elements: (1) the property owner or occupier had actual or constructive knowledge of the condition causing the injury; (2) that the condition posed an unreasonable risk of harm; (3) that the property owner or occupier failed to take reasonable care to reduce or eliminate the risk; and (4) the property owner or occupier's failure to use reasonable care to reduce or eliminate the risk was the proximate cause of injuries to the invitee. *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000).

A condition poses an unreasonable risk of harm when there is a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen. *Dietz v. Hill Country Restaurants, Inc.*, 398 S.W.3d 761, 767 (Tex. App.—San Antonio 2011, no pet.) (citing *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002)).

Whether a condition is unreasonably dangerous is ordinarily a fact question. *United Supermarkets, LLC v. McIntire*, 646 S.W.3d 800, 802 (Tex. 2022). However, the Supreme Court of Texas has held that certain innocuous or commonplace hazards are not unreasonably dangerous as a matter of law, particularly when they have not caused other injuries or been the subject of complaints. *See id.* To raise a fact issue as to whether a common condition may support a premises-

defect claim, Texas law requires "a claimant to adduce evidence either of prior complaints or injuries or that some surrounding circumstance transformed an everyday hazard into one measurably more likely to cause injury." *Christ v. Tex. Dep't of Transp.*, 664 S.W.3d 82, 87–88 (Tex. 2023).

## III. ANALYSIS

### A. Negligence

First, the Court examines Plaintiff's negligence claim. Plaintiff's Original Petition includes only one count titled "**NEGLIGENCE OF DEFENDANT**."[5] However, the structure of the count indicated a premises liability theory.[6] Defendants argue Plaintiff failed to plead a contemporaneous negligent act by Defendants; thus the negligence claim should be dismissed.[7] Plaintiff does not dispute seeking recovery primarily on the theory of premises liability, but seeks to reserve the right to proceed under a negligence theory for breach of a duty of care.[8] The Court agrees with Defendant.

Plaintiff cannot maintain both a negligence claim and a premises liability claim arising from the same injury. *Wilson v. Fiesta Mart #60*, No. 4:25-CV-00196-O, 2026 WL 114927 at *2 (N.D. Tex. Jan. 15, 2026). Texas law states "a person injured on another's property may have either a negligence claim or a premises-liability claim against the property owner." *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016). Here, Plaintiff seeks to preserve a negligence claim even though he admitted to primarily seeking a premises liability claim.[9] This is a request Texas law does not allow. Therefore, Plaintiff's negligence claim is **DISMISSED.**

---

[5] Pl.'s Original Pet. 2–5, ECF No.1-2.
[6] *Id.*
[7] Defs.' Br. Supp. Mot. Summ. J. 7–8, ECF No. 40.
[8] Pl.'s Br. Opp. Mot. Summ. J. 7–8, ECF No. 44.
[9] *Id.*

### B. Premises Liability

Next the Court addresses Plaintiff's premises liability claim. Plaintiff must prove four essential elements: (1) the property owner or occupier had actual or constructive knowledge of the condition causing the injury; (2) that the condition posed an unreasonable risk of harm; (3) that the property owner or occupier failed to take reasonable care to reduce or eliminate the risk; and (4) the property owner or occupier's failure to use reasonable care to reduce or eliminate the risk was the proximate cause of injuries to the invitee. *CMH Homes, Inc.*, 15 S.W.3d at 99. The Parties only raise three disputes including whether the condition in the parking lot was (1) unreasonably dangerous, (2) open and obvious to Plaintiff, and (3) the proximate cause of Plaintiff's injuries. Plaintiff failed to provide evidence showing a dispute of fact that condition of the parking lot was unreasonably dangerous. Therefore, the Court only addresses the first dispute.

A condition poses an unreasonable risk of harm when there is a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen. *Dietz*, 398 S.W.3d at 767 (citing *Cnty. of Cameron*, 80 S.W.3d at 556). Defendants argue the condition was not unreasonably dangerous because the water puddle was the natural result of weather accumulation.[10] Plaintiff responds the condition was created not due to nature but resulted from poor drainage which led to pooling of water and cumulation of algae.[11] The Court agrees with Defendants.

Whether a condition is unreasonably dangerous is ordinarily a fact question. *United Supermarkets, LLC*, 646 S.W.3d at 802. However, multiple courts have determined hazards from natural weather accumulations do not pose an unreasonable danger. *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 675-676 (Tex. 2004); *see also Eubanks v. Pappas Restaurants, Inc.*, 212 S.W.3d 838,

---

[10] Defs.' Br. Supp. Mot. Summ. J. 7–8, ECF No. 40.
[11] Pl.'s Br. Opp. Mot. Summ. J. 7–8, ECF No. 44.

840 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (granting summary judgment when plaintiff slipped on slime which accumulated during a rainstorm while plaintiff was in a restaurant); *Scott & White Mem'l Hosp. v. Fair,* 310 S.W.3d 411, 414 (Tex. 2010) (finding that ice is not an unreasonably dangerous condition in premises liability cases). In *M.O. Dental Lab*, the Texas Supreme Court addressed the question of whether ordinary mud or dirt which accumulated naturally on a manmade concrete slab outside a business posed an unreasonable danger. 139 S.W.3d at 672. The Texas Supreme Court overturned the appeals court which distinguished between the accumulation of mud on a man-made surface versus accumulation on unimproved land. *Id.* at 675–676. The Texas Supreme Court found that distinction immaterial. *Id.* "Ordinary mud that accumulates naturally on an outdoor concrete slab without the *assistance or involvement of unnatural contact* is, in normal circumstances, nothing more than dirt in its natural state and, therefore, is not a condition posing an unreasonable risk of harm." *Id.* at 676 (emphasis added). The Texas Supreme Court's reasoning suggests courts examine the substance (in this case slime) upon which a person slips to determine if the substance is either a natural occurrence or involved unnatural contact. Courts do not examine the surrounding area where the substance accrues, in *M.O. Dental Lab* the surrounding area was the concrete ramp, here, it is the parking lot. "Holding a landowner accountable for naturally accumulating mud that remains in its natural state would be a *heavy burden* because rain is beyond the control of landowners." *Id.* Slime is subject to the same standard as mud. *O'Connor v. Wal-Mart Stores Texas, L.L.C.*, No. 21-40609, 2023 WL 316368 at *2 (5th Cir. Jan. 19, 2023).

Plaintiff argues the Fifth Circuit in *O'Connor* held that algae caused by poor drainage is distinguishable from natural mud.[12] No. 21-40609, 2023 WL 316368 at * 2–4. However, Plaintiff

---

[12] *Id.* at 13.

misstates the reasoning of the Fifth Circuit. In *O'Connor*, the plaintiff provided testimony from the store manager stating, "the water from the garden center drains out of the garden center onto the sidewalk [where O'Connor fell], down into the drainage area into the parking lot." *Id.* at 3. The Fifth Circuit found the plaintiff's evidence of "assistance or involvement of unnatural contact" in creating the pooling water defeated the "heavy burden" in favor of the landowner when determining if an unreasonably dangerous condition occurred. *Id.* Specifically, the Fifth Circuit reasoned it was defendant's contribution to the pooling water from the garden center drainage, not the condition of the area where the pooling water occurred, which overcame the heavy burden. *Id.* Once again affirming the principle that Courts look at the substance upon which a plaintiff slips, not the surrounding area.

Here, the evidence indicates the slime which Plaintiff slipped on was in its natural state because the pool of water was caused by heavy rain.[13] Plaintiff did provide testimony from the store manager stating, "after heavy rain it was typical for water to pool in the parking lot that would require the employees to squeegee the water because it posed a hazard to customers."[14] Further, the store manager "used degreaser or bleach to clean mud and algae from the parking lot after every time it rained."[15] However, none of this testimony reveals whether the substance which Plaintiff slipped on was an unnatural substance and therefore unreasonably dangerous.

Indeed, the Fifth Circuit has applied the natural accumulation doctrine to water even after a defendant took steps to make the property safer from the natural accumulation. *Barron v. United States*, 111 F.4th 667 (5th Cir. 2024), *certified question accepted* (Aug. 9, 2024), *certified question dismissed* (Sept. 20, 2024). In *Barron*, the defendant knew the risk of certain low water crossings,

[13] Defs.' Reply 6, ECF No. 50.
[14] Pl.'s Br. Opp. Mot. Summ. J. 11, ECF No. 44.
[15] *Id.*

took steps to prevent injury by setting up gates to prevent crossings, and set up a patrol to ensure the gates were closed. *Id.* at 670. The plaintiff in *Barron*, tried to cross before the gates closed and tragically passed away after the current swept up his car. *Id.* at 671. The Fifth Circuit applied the natural accumulation doctrine and denied the plaintiff's claim as a matter of law. *Id.* "It is undisputed that Appellants' claims are grounded in the allegation that heavy rain accumulated at the low water crossing and resulted in Barron's car being swept away by flood waters. Thus, the natural accumulation doctrine applies. . . ." *Id.* at 672 (internal quotations omitted). Plaintiff's evidence that Defendants previously took steps to make the property safe after water accumulation does not satisfy the burden of creating a dispute of material fact as to whether the water accumulation and resulting slime was unnatural. *See also Scott & White Mem'l Hosp.*, 310 S.W.3d at 418–419 (stating defendant negligently deicing a road causing the ice to refreeze does not turn a natural condition into an unnatural one). Plaintiff "did not meet his burden to raise a fact issue regarding whether the slime . . . was not a naturally occurring substance." *Eubanks.*, 212 S.W.3d at 841 (holding that the trial court did not err in granting appellees' motion for summary judgment when appellee failed to meet this burden). Plaintiff has not provided evidence to show that Defendants contributed to the pooling water and thus failed to meet the burden of raising a fact issue regarding whether the slime was a naturally occurring substance. Because Plaintiff failed to show an unreasonably dangerous condition, Defendants' Motion for Summary Judgment is **GRANTED**.

## IV. CONCLUSION

Plaintiff filed a Motion to File a Sur-Reply (ECF No. 52). There is no right to file a sur-reply. *Butler v. S. Porter*, 999 F.3d 287, 297 (5th Cir. 2021). Sur-replies are heavily disfavored and the decision to allow a sur-reply lies within the district court's discretion. *Georgia Firefighters'*

*Pension Fund v. Anadarko Petroleum Corp.*, 99 F.4th 770, 774 (5th Cir. 2024). Furthermore, the Court did not rely on any of the four arguments Plaintiff claims Defendants raised for the first time in the Reply.[16] Therefore, the Court **DENIES** Plaintiff's Motion for Leave to File a Sur-reply (ECF No. 52), as **MOOT**.

For the foregoing reasons, Plaintiff failed to demonstrate a genuine dispute of material fact to show an unreasonably dangerous condition. Accordingly, the Court **GRANTS** summary judgment for the Defendants and **DIMISSES** the case with prejudice.

**SO ORDERED** this **10th day** of **September, 2026**.

Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**

[16] Pl.'s Mot. Leave File Sur-reply 2–3, ECF No. 52.